IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

SOLAR LEASING, INC.,                )
                                     )
                    Plaintiff,       )
                                     )
vs.                                  )          Civil No. 2017-76
                                     )
WILLIAM L. HUTCHINSON,               )
                                     )
                                     )
                    Defendant.       )
_____    )

## MEMORANDUM OPINION AND ORDER

Before the Court is defendant William L. Hutchinson's "Motion to Compel Arbitration &

for Dismissal" pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. [ECF 13].

## I.     BACKGROUND[1]

Plaintiff Solar Leasing, Inc. is a California corporation that leases equipment. [ECF 1] at

1; [ECF 13] at 1. Hutchinson, a citizen of Texas, was the managing member or principal of Dun-

Run Golf, LLC; Dun-Run Development, LLC; and Dun-Run Holdings, LLC (collectively "the

Dun-Run entities").[2] [ECF 1] at 1. Dun-Run Golf owned and operated the Mahogany Run Golf

Course on St. Thomas, United States Virgin Islands. *Id.* ProSolar Systems, LLC is a Florida

limited liability company. *Id.* at 10.

On February 13, 2013, Hutchinson signed a contract on behalf of Dun Run Holdings with

Solar Leasing and ProSolar Systems for the installation and lease of a photovoltaic solar energy

---

[1] These background facts are derived from the allegations in the complaint and the parties' briefs, and are largely undisputed.

[2] In the "Recitals" section of the Leasing Agreement, Dun-Run Holdings, LLC is defined as including Dun-Run Golf, LLC and Dun-Run Development, LLC. [ECF 1] at 10.

system (the "Leasing Agreement") at the Mahogany Run Golf Course. *Id.* at 10, 14. The Leasing

Agreement provided that the lessee would make an initial deposit, followed by monthly payments

over a 13-year term, and that Hutchinson would personally guarantee the lessee's payment

obligations. *Id.* at 10, 12. Also on February 13, 2013, Hutchinson executed a guaranty (the

"Personal Guaranty"), which provided that he would personally guarantee the Dun-Run entities'

financial obligations under the Leasing Agreement.[3] *Id.* at 21.

On December 21, 2017, Solar Leasing sued Hutchinson, alleging that prior to September

2017, "defendant transferred, sold, and conveyed the golf course property and the ownership of

the Mahogany Run golf course property to Mandahal [sic] Bay Holdings, Inc. [], and without

plaintiff's knowledge or consent, assigned the Leasing Agreement to Mandahal [sic] Bay." [ECF

1] at 3. Solar Leasing further claims that Hutchinson failed to make a buy-out payment due after

the transfer. *Id.* at 4. Hutchinson thereafter filed the instant motion, seeking to compel Solar

Leasing to participate in arbitration under the terms of both the Leasing Agreement and the

Personal Guaranty.

## II.    LEGAL STANDARDS

A.    <u>The FAA</u>

Under the FAA, a district court has jurisdiction over a petition to compel arbitration only

if the court would have jurisdiction over "a suit arising out of the controversy between the parties"

without the arbitration agreement. 9 U.S.C. § 4; *accord Vaden v. Discover Bank*, 556 U.S. 49, 59

(2009) (observing that an independent basis for federal jurisdiction over a dispute is required and

---

[3] Although the parties submitted different versions of the Leasing Agreement, *compare* [ECF 13-1] *with* [ECF 1] at 8-19, the parties do not appear to dispute the date the Leasing Agreement and the Personal Guaranty were signed or who signed them.

that the FAA is not itself a basis for federal jurisdiction). Here, diversity jurisdiction exists over the underlying substantive dispute under 28 U.S.C. §1332. Thus, this Court has jurisdiction to decide defendant's motion to compel arbitration.

The FAA applies to a contract "evidencing a transaction involving commerce to settle by . . . or submit to arbitration" any controversy arising out of that contract.[4] 9 U.S.C. § 2. Further, the FAA establishes a "strong federal policy in favor of resolving disputes through arbitration." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014) (quotation marks omitted). Thus, "the Act [*i.e.*, the FAA], both through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate" whenever possible. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (stating that courts are required to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration"). In addition, the FAA requires that written arbitration agreements be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract

---

[4] The FAA defines "commerce" as "commerce among the several States . . . or in any Territory of the United States . . . ." *Id.* § 1; *see Sewer v. Paragon Homes, Inc.* 351 F. Supp. 596, 598 (D.V.I. 1972) (holding that the FAA "applies to mandate stays of legal proceedings conducted in the District Court of the Virgin Islands"). The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citation omitted). The Supreme Court has further explained that the phrase "evidencing a transaction" means that the transaction turns out, in fact, to involve interstate commerce, "even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995).

The FAA's broad interstate commerce requirement is satisfied in this case; the transaction was between plaintiff, a California corporation, and defendant, a citizen of the state of Texas, and the materials leased were for a commercial property in the U.S. Virgin Islands. Accordingly, the transaction did, in fact, involve interstate commerce.

between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.").

Accordingly, prior to compelling arbitration pursuant to the FAA, a court must first conclude that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement. *Flintkote Co.*, 769 F.3d at 220. A "party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." *In re Pharm. Benefit Managers Antitrust Litig.,* 700 F.3d 109, 116 (3d Cir. 2012) (quotation marks omitted); *see* 9 U.S.C. §§ 3-4.

In determining whether to compel arbitration, courts rely on the principles of applicable state law. *See Golden Gate Nat'l Senior Care, LLC v. Addison*, 2014 WL 4792386, at *13 (M.D. Pa. Sept. 24, 2014) (citing *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989)). Here, both the Leasing Agreement and the Personal Guaranty were allegedly formed in the Virgin Islands. [ECF 1] at 2. In addition, both agreements explicitly state that they are to be interpreted pursuant to the laws of the Virgin Islands. *Id.* at 14 , 22. Thus, the Court will apply Virgin Islands law to the instant contract dispute.

B.     Virgin Islands Law

"The Virgin Islands Supreme Court has not expressly adopted the common law rule for formation of a valid contract." *Valentin v. Grapetree Shores*, 2015 WL 13579631, at *3 (V.I. Super. Ct. June 30, 2015). "However, the basic elements for what constitutes a valid contract are so widely accepted and fundamental to the practice of law in the Virgin Islands and every other United States jurisdiction that maintaining these elements is unquestionably the soundest rule for the Virgin Islands."[5] *Id.* (citing *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (2014)).

---

[5] Where prior precedent does not provide "the appropriate common law rule," the court must first "ascertain[]

Thus, "[i]n the Virgin Islands, a valid contract requires a 'bargain in which there is a mutual assent to the exchange, and consideration.'" *Id.; accord Sunshine Shopping Ctr., Inc. v. LG Elecs. Panama, S.A.*, 2018 WL 4558982, at *7 (D.V.I. Sept. 21, 2018) (applying Virgin Islands law). "Assent is not measured by subjective intent, but by outward expression." *Valentin*, 2015 WL 13579631, at *3. Further, "[i]n an arbitration agreement, consideration exists where both parties agree to be bound by the arbitration." *Id.*

C.     Standard for Deciding a Motion to Compel Arbitration

When considering a motion to compel arbitration, a district court must apply either the standard used to resolve motions to dismiss or that used to resolve motions for summary judgment. Where "it is apparent" based on the complaint and supporting documents "that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (quotation marks omitted). In other words, "[m]otions to compel arbitration are reviewed under Rule 12(b)(6) '[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint).'" *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). Conversely, where arbitrability is not apparent, or if the party seeking to avoid arbitration has put forth sufficient additional facts to place the agreement to arbitrate in issue, a motion to compel arbitration should be considered under a Rule 56 summary judgment standard, after providing the parties the opportunity for limited discovery on the issue of arbitrability. *Id.*

---

whether any Virgin Islands courts have previously adopted a particular rule, then identify[] the position taken by a majority of courts from other jurisdictions, and finally determin[e] which approach represents the soundest rule for the Virgin Islands." *Government of Virgin Islands v. Connor*, 2014 WL 702639, at *4 (V.I. Feb. 24, 2014) (citing *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011)).

## III.    DISCUSSION

For the reasons stated below, the Court finds that the issue of arbitrability is apparent from the complaint and two of its exhibits—the Leasing Agreement and the Personal Guaranty.  Further, although Solar Leasing argues that the Court should allow limited discovery on the issue of arbitrability, Solar Leasing does not identify what facts might be learned through discovery that would place the agreement to arbitrate in issue.  *See Pemberton v. Hovensa, LLC*, 2009 WL 1138086, at *4-5 (D.V.I. Apr. 24, 2009) (discussing the difference between discovery in arbitration and discovery in litigation and noting that "to grant parties unfettered leave to engage in protracted pre-arbitration discovery would invariably frustrate the FAA's presumptive goal of arbitration as an efficient alternative to litigation," especially where "the party resisting arbitration has not raised[] any factual challenges to contract formation.").  Therefore, in applying the Rule 12(b)(6) standard to Hutchinson's motion to compel arbitration, the Court will examine the complaint, the Leasing Agreement, and the Personal Guaranty to determine if any reading of these documents could relieve Solar Leasing of the obligation to arbitrate.  *See Parker v. Briad Wenco, LLC*, 2019 WL 2521537, at *2 (E.D. Pa. May 14, 2019) ("Accordingly, when applying the Rule 12(b)(6) standard to a motion to compel arbitration, courts should examine whether there can be no reading of the Complaint that could rightly relieve Plaintiff of the arbitration provision.") (quotation marks omitted).

Hutchinson argues that pursuant to the express terms of the Leasing Agreement, which he contends are incorporated into the Personal Guaranty, the parties must resolve the instant dispute through binding arbitration.  [ECF 13] at 4.  Solar Leasing's opposition is threefold.  First, Solar Leasing argues that the Personal Guaranty does not contain an arbitration provision, and there is therefore no agreement to arbitrate the present dispute.  [ECF 26] at 1-2.  Next, Solar Leasing

counters that even if the Leasing Agreement's arbitration provision may be read into the Personal Guaranty, the provision is not a valid and enforceable agreement to arbitrate. *Id.* at 4-10. Finally, Solar Leasing argues that a condition precedent to compelling arbitration has not been met, in that the parties must first engage in informal efforts to resolve the matter, and then participate in mediation. *Id.* at 2, 17. These arguments will each be discussed below.

A.    Whether the Arbitration Provision in the Leasing Agreement Applies to the Personal Guaranty

Hutchinson contends that the Personal Guaranty mandates the use of binding arbitration because the Personal Guaranty incorporates, by reference, the terms of the Leasing Agreement. [ECF 13] at 4. Solar Leasing counters that although the first numbered paragraph of the Personal Guaranty begins with the phrase, "Subject to the Agreement," that does not mean the terms of the Leasing Agreement are incorporated by reference. [ECF 26] at 11. Rather, Solar Leasing avers that "the 'subject to' language Hutchinson relies on is specifically limited, by the terms of the Guaranty itself, to only the 'financial obligations' as defined in the Guaranty." *Id.* (emphasis in original). Solar Leasing claims: "[I]t is only the prompt, full and complete performance of any and all financial obligations in the lease[, as described in the first paragraph of the Personal Guaranty,] which are guaranteed 'subject to' the terms and conditions in the lease." *Id.* at 14. Solar Leasing also argues that paragraphs 6, 7, 8 and 13 of the Personal Guaranty "clearly evidence the parties['] intent to allow [Solar Leasing] to enforce the Guaranty by suit at law or in equity, and do not require arbitration." *Id.* at 15-16.[6]

---

[6] Paragraphs 6, 7, 8 and 13 of the Personal Guaranty provide as follows:

> 6.    The Guarantor further waives all rights, by statute or otherwise, to require the Lessor to institute suit against the Lessee, and to exercise diligence in enforcing this Guaranty or any other instrument.

A non-signatory may be bound to arbitrate a dispute when "traditional principles of state law allow a contract to be enforced . . . against nonparties to the contract through assumption, piercing the corporate veil, alter ego, *incorporation by reference*, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quotation marks omitted) (emphasis added); *accord Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164, 170 (3d Cir. 2009) (recognizing that non-signatories to an arbitration agreement may be bound under the theory of incorporation by reference). "Arbitration provisions are generally enforced through incorporation by reference in cases . . . where the non-signatory is expressly referenced in the contract containing the arbitration clause or the contract containing the clause is clearly adopted by another document." *Aurum Asset Managers, LLC v. Banco Do Estado Do Rio Grande Do Sul*, 2010 WL 4027382, at *6 (E.D. Pa. Oct. 13, 2010).

In *Century Indemnity Company v. Certain Underwriters at Lloyd's London*, the United States Court of Appeals for the Third Circuit held that the arbitration provision contained within three reinsurance contracts were incorporated by reference into three corresponding retrocessional

---

7.   The Guarantor represents that at the time of the execution and delivery of this Guaranty nothing exists to impair the effectiveness of this Guaranty.

8.   All of the Lessor's rights, powers and remedies available under this Guaranty and under any other agreement in force now or anytime later between the Lessor and the Guarantor will be cumulative and not alternative, and will be in addition to all rights, powers and remedies given to the Lessor by law or in equity.

* * *

13   Words of "Guaranty" contained in this Guaranty in no way diminish or impair the absolute liability created in this Guaranty.

[ECF 1] at 22.

agreements. 584 F.3d 513, 555 (3d Cir. 2009). In so concluding, the court focused on the existence of two incorporation-by-reference clauses within the retrocessional agreements. *Id.* at 551-52. The court found that the first clause (1) identified the reinsurance contract that would be insured by Lloyds, (2) attached and incorporated that contract by reference, and (3) specified the percentage of the contract's liabilities and premiums that Lloyds would assume, and the second clause then applied "all the terms and provisions of the incorporated reinsurance treaty to the retrocessional agreement." *Id.* at 551. Further, the court noted that the retrocessional agreements lacked any limiting language in the form of "contractual provisions that limited the applicability of the incorporated arbitration clause." *Id.* at 552.

In *GGIS Insurance Services, Inc. v. Lincoln General Insurance Company*, the issue before the court was whether the Manager's Personal Guaranty—a contract that was signed by the CEO of GGIS in his personal capacity—incorporated by reference the arbitration clause contained within the Program Manager Agreement ("PMA") between GGIS and Lincoln. 773 F. Supp. 2d 490, 499 (M.D. Pa. 2011). Following an extensive discussion of the *Century* decision, the court held that it did. *Id.* at 501-04. First, the court noted that, as in *Century*, the guaranty the CEO signed in his personal capacity contained two passages that referenced the incorporation of the PMA. *Id.* at 503. The court stated: "If the first instance of language of incorporation could be said to do no more than define the scope of [the CEO's] derivative liability . . . then the second instance must be construed to do precisely what it says: 'fully set forth' the foregoing recitals, including the incorporation of the PMA." *Id.*

Next, once more referencing *Century*, the court noted that nothing in the language of incorporation expressly excluded the arbitration provision. *Id.* at 503-04. In the court's view, although the PMA's arbitration provision only referenced GGIS and Lincoln, "the Guaranty

performs 'a certain level of transplantation or translation to resolve the imprecision inherent in general incorporation language,' [] which makes [it] effective against [the CEO]." *Id.* at 504.

In the case at bar, the Personal Guaranty provides in pertinent part as follows:

> **IN CONSIDERATION OF** good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor, personally guarantees the prompt, full and complete performance of any and all financial obligations of the Lessee to the Lessor (the "Lease Obligations"), *subject to the terms and conditions contained in the Solar Photovoltaic System Leasing Agreement* (the "Agreement"), *attached hereto and* pursuant to the following terms and conditions:
>
> > 1. *Subject to the Agreement*, the Guarantor guarantees that the Lessee will promptly pay the Lease Obligations as and when the same will in any manner be or become due, either according to the terms and conditions provided by the Agreement or upon acceleration of the payment under the Agreement by reason of a default of Lessee. It is specifically understood and agreed that Guarantor has any defenses of the Lessee provided under the Agreement and pursuant to its terms.

[ECF 1] at 21 (emphasis added). Hutchinson was not—in his personal capacity—a signatory to the Leasing Agreement. Thus, the only way the arbitration agreement applies to him is if the Personal Guaranty, which he did sign in his personal capacity, incorporates by reference the terms of the Leasing Agreement. The Court finds that it does.

First, the plain language of the Personal Guaranty leads the Court to conclude that the parties intended to incorporate the Leasing Agreement's terms into the Personal Guaranty. The initial paragraph states that Hutchinson guarantees certain obligations "subject to the terms and conditions contained in the Solar Photovoltaic System Leasing Agreement." *Id*. That sentence continues with the conjunctive "and" before it recites additional terms and conditions that pertain to the Personal Guaranty. *Id*. Further, there is there is no language in the Personal Guaranty that

expressly excludes the Leasing Agreement's arbitration clause from the terms and conditions to which the Personal Guaranty is otherwise subject. In addition, the Court observes that the initial paragraph also states that a copy of the Leasing Agreement was physically attached to the Personal Guaranty. *Id*.

Next, numbered paragraph 1 of the Personal Guaranty again refers to the Leasing Agreement; it begins with the language "[s]ubject to the [Leasing] Agreement." *Id*. Moreover, Hutchinson's guaranty obligation is itself referenced at least twice in the Leasing Agreement, which contains the arbitration clause. [ECF 1] at 10.

Although Solar Leasing repeatedly argues that the "subject to" language in the Personal Guaranty refers only to the financial obligations described in the Leasing Agreement, that argument misses the mark. The reference to "any and all financial obligations of [the Dun-Run entities] to [Solar Leasing]," [ECF 1] at 21, only describes what is being guaranteed, not how that guaranty may be enforced.[7] In addition, paragraphs 6 through 8 and 13 are simply not inconsistent with a finding that the Leasing Agreement's requirement to arbitrate applies to the Personal Guaranty.

The Court thus finds, following *Century* and *GGIC*, that the parties intended to apply the terms of the Leasing Agreement's arbitration provision to the Personal Guaranty.

B.   Whether the Arbitration Provision is Definite Enough to Enforce

The Court next addresses whether the parties' agreement to arbitrate is valid. The arbitration provision, which is in paragraph 13 of the Leasing Agreement, provides as follows:

---

[7] Hutchinson's financial obligations are stated in paragraph 1 of the Personal Guaranty ("... the Guarantor guarantees that the Lessee will promptly pay the Lease Obligations . . . .") and paragraph 5 ("The liability of the Guarantor will continue until payment is made of every obligation of the Lessee . . . and until payment is made of any loss or damage incurred by the Lessor . . . ."). [ECF 1] at 21.

### 13. Arbitration and Dispute Resolution

(a)   You agree that to expedite and control the costs of disputes relating to the Solar Lease ("Dispute"), such matter will be resolved according to the procedure set forth in this Paragraph 13.

(b)   Unless otherwise agreed in writing, Solar Lessors and you agree to continue to perform each party's respective obligations under the Solar Lease during the course of the Dispute.

(c)   You agree to first try to resolve informally any Dispute. Accordingly, neither Solar Lessors nor you will start a formal proceeding for at least forty-five (45) days after notifying the other party in writing of the Dispute. You agree to send your notice to the addresses on the first page of this Solar Lease, and Solar Lessors will send their notice to your billing address.

(d)   If Solar Lessors and you cannot resolve the Dispute informally or by nonbinding mediation, the Dispute will be resolved by binding arbitration at a venue located in St. Thomas, Virgin Islands.

[ECF 1] at 15.

In *Virgin Islands Water and Power Authority v. General Electric International*, a case cited by Solar Leasing, the court concluded that the arbitration agreement before it was deficient because it failed to (1) "express the desire of the parties in the matter to submit disputes to arbitration;" (2) "state explicitly that the parties have agreed to arbitrate and to evince implicitly the parties' intent to submit their dispute to arbitration;" and (3) "list with any particularity or to state in general, inclusive terms what sorts of disputes are subject to arbitration." 2009 WL 1918238, at *3-4 (D.V.I. June 30, 2009). The arbitration agreement in this case does not suffer from these same deficiencies.

First, the parties' desire to submit their disputes to arbitration is expressly stated in subpart (d) of paragraph 13. Second, the parties' intent to submit their disputes to arbitration is implicitly

evinced by their signatures on the Leasing Agreement.  Third, although paragraph 13 does not list examples of the types of disputes covered by the agreement, subpart (a) broadly states that the agreement to arbitrate covers "disputes relating to the Solar Lease."  Thus, the agreement does "state in general, inclusive terms," the sorts of disputes subject to arbitration.  *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 531-33 (3d Cir. 2005) (court deemed arbitration agreement valid where it covered "[a]ll disputes, claims, and controversies arising under [the] agreement."); *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000) ("An arbitration agreement is not vague solely because it includes the universe of the parties' potential claims against each other.").

Fourth, although Solar Leasing contends that the arbitration agreement is deficient because it fails to specify the process by which arbitration will take place or the number of arbitrators and the manner of their selection, these arguments are unpersuasive.  In *In re Sprint Premium Data Plan Marketing and Sales Practices Litigation*, the District Court of New Jersey concluded that despite the fact that Sprint's arbitration agreement lacked essential terms, it was still enforceable. 2012 WL 847431, at *4 (D.N.J. Mar. 13, 2012).  Citing a decision from the Western District of Michigan in which the court held that the failure to specify rules and procedures for arbitration was permissible "so long as the language of an arbitration agreement does not give one party exclusive authority to define the arbitral forum," the New Jersey District Court concluded that "the pertinent federal law suggests that [plaintiff's] arbitration clause is not unenforceable due to the absence of essential terms."  *Id.* at *4 (citing *Vegter v. Forecast Fin. Corp.*, 2007 WL 4178947, at *3 (W.D. Mich. Nov. 20, 2007)).  Taking a slightly different approach, the District Court of Delaware found that the arbitration agreement at issue was not impermissibly vague, but also noted that if its conclusion was incorrect, either the FAA or state law would provide any missing "gap

fillers." *Cornell Univ. v. Illumina, Inc.*, 2018 WL 481782, at *5 (D. Del. Jan. 19, 2018) (discussing

*Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 793 (N.D. Ill. 2013) (finding that

"any matters of uncertainty in the . . . arbitration provision can be made complete under the FAA

and the [state] Uniform Arbitration Act")).

In the instant case, the arbitration agreement does not specify the process by which

arbitration is to be conducted or the method by which arbitrators are to be selected. However, the

arbitration agreement is broad in its scope and does not give one party greater authority over

decisions relating to the arbitral forum. In addition, the FAA speaks to those instances where the

arbitration agreement fails to provide a method for choosing arbitrators:

> If in the agreement provision be made for a method of naming or
> appointing an arbitrator or arbitrators or an umpire, such method
> shall be followed; but if no method be provided therein, or if a
> method be provided and any party thereto shall fail to avail himself
> of such method, or if for any other reason there shall be a lapse in
> the naming of an arbitrator or arbitrators or umpire, or in filling a
> vacancy, then upon the application of either party to the controversy
> the court shall designate and appoint an arbitrator or arbitrators or
> umpire, as the case may require, who shall act under the said
> agreement with the same force and effect as if he or they had been
> specifically named therein; and unless otherwise provided in the
> agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. Thus, the Court finds that the arbitration agreement is not impermissibly vague.[8]

---

[8] In addition to *Virgin Islands Water and Power Authority*, Solar Leasing discusses four additional cases in
support of its contention that the arbitration agreement in the instant case is too vague to be enforceable. However,
none of those cases is persuasive, and none is from a court within the Third Circuit. In *Lindsay v. Lewandowski*, 139
Cal. App. 4th 1618, 1620, 1622-23 (2006), the court held *inter alia* that the stipulated settlement agreement was
unenforceable because (1) the parties failed to agree on a procedure to resolve payment disputes; and (2) certain parties
signed an agreement that provided for dispute resolution through "binding mediation" whereas other parties signed an
agreement that had the word "mediation" crossed out and the word "arbitration" typed above, demonstrating to the
court that the parties did not consider the two to be equivalent procedures. In the instant case, Solar Leasing does not
argue that the term "binding arbitration" is vague; rather, it argues that the procedures for conducting arbitration are
not specified. Thus, the *Lindsay* case is not instructive. Neither are the three Florida cases Solar Leasing discusses
next.

In *Davis v. Hearthstone Senior Communities, Inc.*, 155 So. 3d 1232, 1234 n.1 (Fla. 2nd DCA 2015), the court
concluded that "the signature page of the agreement [at issue] contains no terms from which the court could otherwise

C.      Whether the Dispute Falls Within the Scope of the Arbitration Provision

According to Hutchinson, "each and every count of the Complaint—breach of contract, action to enforce personal guaranty, and damages—arises out of Defendant's alleged breach of both the Lease Agreement and the Personal Guaranty." [ECF 13] at 4. Solar Leasing counters that if the terms of paragraph 13 of the Leasing Agreement do apply to the instant dispute, the parties must engage in mediation prior to arbitration. [ECF 26] at 15-16.

The Court finds that the instant dispute between Solar Leasing and Hutchinson falls within the scope of the arbitration provision. The gravamen of Solar Leasing's Complaint is that (1) the Dun-Run entities breached the terms of the Leasing Agreement by transferring ownership of the Mahogany Run Golf Course to another entity without Solar Leasing's knowledge or consent; (2) the Dun-Run entities refused to pay Solar Leasing the buy-out amount within the requisite time period; (3) the Dun-Run entities refused to participate in mediation; and (4) as personal guarantor, Hutchinson is personally liable for the Dun-Run entities' financial obligations under the Leasing Agreement. Thus, even if the Court were to find—as Solar Leasing argues—that the arbitration provision in the Leasing Agreement only applies to Hutchinson's promise to guarantee the Dun-Run entities' financial obligations, it applies to the instant dispute because all of the actions Solar Leasing complains of are financial in nature.

---

infer the intent of the parties" and was therefore unenforceable. Specifically, the court found that the agreement "fails to indicate whether the arbitration is binding or nonbinding, how many arbitrators are to be used, how the arbitrator will be selected, or what issues are to be included." *Id.* at 1234. Similarly, in *Spicer v. Tenet Florida Physician Services, LLC*, 149 So. 3d 163, 164 (Fla. Dist. Ct. App. 2014), an employment case, the court held that (1) on its own, the employment agreement did not contain a valid arbitration agreement; and (2) the employment agreement did not incorporate by reference a separate "legally sufficient agreement to arbitrate." Lastly, in *Garcia v. Church of Scientology Flag Services Organization, Inc.*, 2015 WL 10844160, at *8 (M.D. Fl. Mar. 13, 2015), the court stated that "an enforceable arbitration agreement will include: (1) the manner of selecting the arbitrators, (2) the number of arbitrators, (3) the matters to be arbitrated, and (4) whether the arbitration is binding or nonbinding." In the instant case, it is undisputed that the process by which arbitration will take place is not defined in the agreement. However, the agreement does provide for binding arbitration and does define the scope of the agreement. Further, as discussed *infra*, the court is persuaded by authority from its sister courts that permits the FAA and state law to fill any missing gaps in the arbitration agreement's statement of applicable procedures.

Lastly, to the extent that the language regarding the scope of the arbitration agreement is ambiguous, the Court interprets the language, as it must, in favor of arbitration. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Local 827, Int'l Bhd. of Elec. Workers, AFL-CIO v. Verizon N.J., Inc.*, 458 F.3d 305, 311 (3d Cir. 2006) ("If the arbitration clause is clearly broad or ambiguous, we will apply the presumption of arbitrability. If the clause is not ambiguous and clearly delimits the issues subject to arbitration, the presumption of arbitrability does not apply."); *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) ("The language 'any transaction involved' in the arbitration provision in our case is ambiguous. However, in light of the federal policy mandating that we interpret ambiguous contractual language in favor of arbitration, we read 'any transaction involved' to mean any business dealing relating, in whole or in part, to [the insurance policy covering the workers' compensation claim at issue]."); *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) ("[A]n agreement to arbitrate a particular dispute 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)); *see also Browne v. Acuren Inspection, Inc.*, 2014 WL 1308838, at *1 n.2 (D.V.I. Mar. 31, 2014) (noting that "[t]he Virgin Islands Supreme Court has also recognized the strength of the policy favoring arbitration where a valid arbitration agreement exists") (citing *Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 191-92 (2009)). Here, the language in paragraph 13 of the Leasing Agreement refers simply to "disputes relating to the Solar Lease." [ECF 1] at 15. It neither identifies those disputes that are covered by the agreement nor delineates those that are not. Thus, the Court applies the presumption of arbitrability.

In sum, the Court finds as follows. First, the Personal Guaranty incorporates by reference the terms of the Leasing Agreement, including the arbitration provision. Second, that provision is a valid agreement to arbitrate. Third, the instant dispute (wherein Solar Leasing seeks financial compensation from Hutchinson for the Dun-Run entities' breach of the Leasing Agreement) falls within the terms of the arbitration provision. Fourth, pursuant to the terms of the arbitration provision, the parties must attempt to "resolve the Dispute informally or by nonbinding mediation" prior to beginning binding arbitration.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Hutchinson's "Motion to Compel Arbitration & for Dismissal" [ECF 13] be GRANTED as follows:

1.    Solar Leasing's action against Hutchinson is STAYED.

2.    On or before November 15, 2019, the parties shall engage in informal negotiations or non-binding mediation under paragraph 13(c) of the Leasing Agreement. Upon completion, the parties shall jointly advise the Court of the status of this action.

3.    If informal negotiations or non-binding mediation is unsuccessful, the parties shall engage in binding arbitration under subpart (d) of the Leasing Agreement. Upon completion, the parties shall jointly advise the Court of the status of this action.

4.    The costs associated with efforts to negotiate a resolution to the instant dispute shall be shared equally by the parties.

**Dated:** September 20, 2019                      S_____

                                                            **RUTH MILLER**
                                                            United States Magistrate Judge