IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| SOLAR LEASING, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Civil No. 2017-76 |
| WILLIAM L. HUTCHINSON, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant William L. Hutchinson's "Motion to Lift Stay & Incorporated Status Update" [ECF 41] and "Plaintiff's Combined Motion in Aid of Choosing Arbitrator; Motion to Disqualify Attorney Kroblin, and Response to Defendant's Motion to Lift Stay" [ECF 43].[1]  After a hearing on May 20, 2021, the parties filed additional memoranda addressing several issues the Court raised.  [ECFs 50, 51, 52].

### I.   BACKGROUND

Plaintiff Solar Leasing, Inc. is a corporation that leases equipment.  Compl. [ECF 1] at 1; [ECF 13] at 1.  Hutchinson was the managing member or principal of Dun-Run Golf, LLC; Dun-Run Development, LLC; and Dun-Run Holdings, LLC (collectively "the Dun-Run entities").  Compl. [ECF 1] at 1.  Dun-Run Golf owned and operated the Mahogany Run Golf Course on St. Thomas, United States Virgin Islands.  *Id.*

---

[1] *See also* [ECFs 46, 47].

On February 13, 2013, Hutchinson signed a contract on behalf of Dun Run Holdings with Solar Leasing and another company for the installation and lease of a photovoltaic solar energy system (the "Leasing Agreement") at the Mahogany Run Golf Course. Compl. [ECF 1] at 10, 14. The Leasing Agreement provided for certain payments over a 13-year term, and that Hutchinson would personally guarantee the lessee's payment obligations. *Id.* at 10, 12. Also on February 13, 2013, Hutchinson executed the required guaranty (the "Personal Guaranty"). *Id.* at 21.

On December 21, 2017, Solar Leasing sued Hutchinson, alleging that prior to September 2017, "defendant transferred, sold, and conveyed the golf course property and the ownership of the Mahogany Run golf course property to Mandahal [sic] Bay Holdings, Inc. [], and without plaintiff's knowledge or consent, assigned the Leasing Agreement to Mandahal [sic] Bay." Compl. [ECF 1] at 3. Solar Leasing further claims that Hutchinson failed to make a buy-out payment due after the transfer. *Id.* at 4.

Hutchinson moved to compel Solar Leasing to participate in arbitration under the terms of both the Leasing Agreement and the Personal Guaranty; the Court granted Hutchinson's motion on September 20, 2019 [ECF 30]. As part of the Court's Order, the parties were directed to participate in mediation prior to initiating the arbitration, as required in the parties' arbitration agreement. *Id*. at 17. The parties finally participated in a mediation on February 17, 2020 but agreed to thereafter continue discussions "following some agreed document investigation." [ECF 31] at 2. On March 26, 2020, the parties reached an impasse. [ECF 34] at 1. At a status conference with the Court on April 1, 2020, the parties were given 30 days to confer on selecting an arbitrator or having one selected. [ECF 36].

On April 29, 2020, Solar Leasing served a "Demand for Arbitration" ("the Demand") naming as Respondents not only Hutchinson, but also the Dun-Run entities and Mandahal [sic]

Bay Holdings, Inc. [ECF 47-1] at 6-21. The Demand includes claims for breach of various agreements apart from the Lease Agreement, negligent or intentional misrepresentation, breach of fiduciary duty and other claims, in addition to the claim against Hutchinson under the Personal Guaranty. *Id*. at 11-19.

In an email dated May 13, 2020, Hutchinson's counsel, Christopher A. Kroblin, Esq., notified plaintiff's counsel that he "was just today retained to rep the other defendants." [ECF 47-2] at 2. On May 21, 2020, Attorney Kroblin then confirmed by email that "[a]ll parties are in agreement to use AAA [American Arbitration Association] Commercial Arbitration Rules." *Id*. Further, Attorney Kroblin wrote: "As for the arbitrator, there is interest on my side to use someone local to VI but no strong opinion as to who." *Id*. Notwithstanding this representation, the parties apparently considered and rejected 13 potential arbitrators, along with "most of the other attorneys on St. Thomas and St. Croix, but could not come up with a potential arbitrator whom the parties considered suitable or who would not present a conflict related to separate litigations involving either of the parties' respective counsel." [ECF 51] at 2.

After the passage of even more time without an agreement, in February 2021 Solar Leasing initiated arbitration with the AAA, and paid a filing fee of $5,500. [ECF 47-1] at 2-4. The AAA thereafter sought the agreement of both sides to its administration, but Hutchinson declined to agree. [ECF 50] at 6; [ECF 41] at 3. Hutchinson now contends "there is at the root a fundamental disagreement on how to proceed with this matter." *Id*. Because the "process contemplated in the parties' arbitration agreement has broken down," Hutchinson argues that the stay he sought should now be lifted and litigation resumed. *Id*. Hutchinson states further that he "now waives his right to the stay . . . as the parties have failed to select a viable arbitrator, and the time for doing so has now effectively passed." *Id*. at 4.

Solar Leasing, on the other hand, opposes the request to lift the stay, and instead seeks an order in aid of arbitration. [ECF 43].[2] Such an order could, according to plaintiff, require the parties to arbitrate through the AAA, or could aid the parties in choosing an arbitrator. *Id*. Plaintiff opposes lifting the stay as that would "reward years of unnecessary delay, and [result in] the waste of thousands of dollars in attorneys fees, and extensive Court time and judicial resources." *Id*. at 5.

In supplemental briefing following the hearing, Solar Leasing urged that the Court may aid the parties' arbitration efforts by directing them to "review a list of arbitrators provided by the AAA and choose a qualified neutral arbitrator from such a list," as this would be consistent with the parties' agreement to use the AAA commercial rules. [ECF 50] at 4. Alternatively, plaintiff suggests that where, as here, the parties have been unable to agree, Court may appoint an arbitrator under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 5. *Id*. Finally, Solar Leasing argues that Hutchinson's attempt to avoid arbitration should be rejected because he is judicially estopped from changing his earlier successful position on this issue. *Id*. at 4-5. If Hutchinson is permitted to change his position at this stage, according to Solar Leasing, it would visit an "unfair detriment on plaintiff" because of the extreme delay and additional unnecessary expense Solar Leasing has suffered and will continue to experience. *Id*. at 5.

For his part, Hutchinson reiterated his refusal to submit to AAA arbitration, and his waiver of the right to arbitrate. [ECF 52] at 1-4. Additionally, Hutchinson suggests that Solar Leasing could be permitted to file a supplemental pleading under Federal Rule of Civil Procedure 15(d) to seek any damages in the litigation occasioned by Hutchinson's changed position. *Id*. at 5.

---

[2] Solar Leasing also seeks to disqualify Attorney Kroblin based on a purported conflict of interest in representing all the respondents in the arbitration. [ECF 43] at 3-4. Hutchinson responded by pointing out that he is the only defendant in the litigation, and no conflict can therefore arise. [ECF 46] at 4-5.

*Solar Leasing, Inc. v. Hutchinson*
Civil No. 2017-76
Page 5

## II.   DISCUSSION

The Court previously noted that the right to arbitration must derive at the outset from an agreement between the parties, [ECF 30] at 2-4, and that where the parties' agreement lacks certain particulars, the FAA and local law may provide necessary "gap fillers," *id.* at 13-14 (discussing *In re Sprint Premium Data Plan Marketing and Sales Practices Litigation*, 2012 WL 847431, at *4 (D.N.J. Mar. 13, 2012) ("so long as the language of an arbitration agreement does not give one party exclusive authority to define the arbitral forum . . . the pertinent federal law suggests that [plaintiff's] arbitration clause is not unenforceable due to the absence of essential terms.") (citing *Vegter v. Forecast Fin. Corp.*, 2007 WL 4178947, at *3 (W.D. Mich. Nov. 20, 2007)); *Cornell Univ. v. Illumina, Inc.*, 2018 WL 481782, at *5 (D. Del. Jan. 19, 2018) (discussing *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 793 (N.D. Ill. 2013) (finding that "any matters of uncertainty in the . . . arbitration provision can be made complete under the FAA and the [state] Uniform Arbitration Act"))).

Here, the arbitration provision, which is in paragraph 13 of the Leasing Agreement, provides as follows:

> **13.   Arbitration and Dispute Resolution**
>
> (a)   You agree that to expedite and control the costs of disputes relating to the Solar Lease ("Dispute"), such matter will be resolved according to the procedure set forth in this Paragraph 13.
>
> \*   \*   \*
>
> (d)   If Solar Lessors and you cannot resolve the Dispute informally or by nonbinding mediation, the Dispute will be resolved by binding arbitration at a venue located in St. Thomas, Virgin Islands.

Compl. [ECF 1] at 15.

*Solar Leasing, Inc. v. Hutchinson*
Civil No. 2017-76
Page 6

Although the arbitration agreement does not specify the process by which arbitration is to be conducted or the method by which arbitrators are to be selected, it is broad in its scope, it does not give one party greater authority over decisions relating to the arbitral forum, and it provides for binding arbitration. In addition, the FAA speaks to those instances where the arbitration agreement fails to provide a method for choosing arbitrators:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. In fact, Hutchinson relied on this very FAA provision in moving to compel arbitration in the first instance. [ECF 28] at 8.[3] Moreover, this section in mandatory in requiring the Court to "designate and appoint and arbitrator" and, contrary to Hutchinson's current position, does not appear to be limited in time as to when it may be applied.

In addition to filling the gaps in the arbitration provision so as to allow the parties to move forward with arbitration, the Court also considers whether Hutchinson may be judicially estopped from changing from his earlier position that the parties must arbitrate. To that end, the United States District Court for the Virgin Islands' opinion in *Mamouzette v. Jerome* is instructive. There, the Court explained that "[j]udicial estoppel generally prevents a party from prevailing in one

---

[3] Hutchinson additionally argued that an arbitration clause that fails to designate a particular set of rules to govern the arbitration is still enforceable. [ECF 28] at 8. Here, as noted, the parties have already agreed that the AAA Commercial Rules are to govern this arbitration.

phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." 2021 U.S. Dist. LEXIS 44998, *14-15 (D.V.I. 2021) (quotation marks omitted). Further, "[t]he doctrine exists to safeguard the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at *15 (quotation marks omitted). Although there is no precise formula for applying judicial estoppel,

> three factors generally inform a court's application of the doctrine: (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party succeeded in persuading a court to accept its earlier position; and (3) whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Id*. (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

Applying the second and third factors, this Court easily concludes a finding of judicial estoppel is favored. Hutchinson certainly persuaded this Court to accept his position that arbitration was warranted under the parties' agreement. Next, an unfair detriment would be imposed on Solar Leasing absent estoppel, given the lengthy passage of time and the additional expenditures visited upon it. Further, while the first factor gives the Court pause, it is not so great as to negate a finding of judicial estoppel. Though it could be argued that defendant's position did not actually change, but rather only reflects the parties' inability to choose an arbitrator, this argument would ignore Section 5 of the FAA. Where, as here, Hutchinson cited to Section 5 in trying to persuade this Court to compel arbitration, he cannot now be heard to argue that the Court should not employ that section to facilitate the arbitration process.

On this record, the Court concludes that Hutchinson's efforts to now waive arbitration should not be given effect. The parties should proceed to arbitrate their claims before an arbitrator the Court designates under Section 5 of the FAA.

### III.  CONCLUSION

Accordingly, for the foregoing reasons, it is ORDERED that:

1. Hutchinson's motion to lift the stay [ECF 41] is DENIED. The parties are directed to proceed with arbitration, pursuant to their agreement to do so, following the AAA Commercial Rules.

2. That portion of Solar Leasing's motion [ECF 43] in aid of arbitration that seeks the Court's assistance in naming an arbitrator is GRANTED as follows:

    a. Each side shall provide the names of five acceptable arbitrators to the Court no later than August 30, 2021.

    b. The Court will then designate and appoint the arbitrator pursuant to Section 5 of the AAA.

    c. Each side will have 48 hours to challenge the appointment for bias, interest or conflict. That the arbitrator may be opposing counsel in matters involving the parties' counsel here, without more, shall not be a sufficient basis to claim bias or conflict.

    d. In the event the Court finds disqualification of the chosen arbitrator is appropriate, the Court will select another arbitrator from the parties' lists, and this process shall continue until the arbitrator is finally selected.

3. That portion of Solar Leasing's motion [ECF 43] that seeks the disqualifications of respondents' counsel is DENIED without prejudice in the litigation and is deferred for resolution in the arbitration.

**Dated:**  August 24, 2021                    S_____
                                               **RUTH MILLER**
                                               United States Magistrate Judge